1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES CALVIN GAINES,                         No.  2:13-cv-2070 AC P

12                 Plaintiff,

13        v.                                       ORDER and

14   C/O BENNETT, et al.,                          FINDINGS AND RECOMMENDATIONS

15                 Defendants.

16

17        I.     Introduction

18        Plaintiff is a state prisoner, currently incarcerated at Valley State Prison, who proceeds pro

19   se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action

20   proceeds on plaintiff's Eighth Amendment claims that defendant correctional officers Bennett and

21   Neiman failed to protect plaintiff from an assault by another inmate.

22        Presently pending is defendants' motion for summary judgment on the ground that

23   plaintiff failed to exhaust his administrative remedies.  See ECF No. 25.  Alternatively,

24   defendants contend that summary judgment should be granted in their favor on the merits of this

25   action.  Plaintiff filed a response to defendants' statement of undisputed facts, ECF No. 26, and

26   an opposition to defendants' motion for summary judgment on the question of exhaustion, ECF

27   No. 27.  Defendants did not file a reply.

28        These matters are referred to the undersigned United States Magistrate Judge pursuant to

                                                1

1   28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, this court

2   recommends that defendants' motion for summary judgment be granted on failure-to-exhaust

3   grounds, and that this action be dismissed without prejudice.

4           II.        Allegations of Plaintiff's Verified Complaint and Declaration

5           Pursuant to his verified complaint, plaintiff alleges that he was assaulted by inmate Abel

6   Garcia in July 2010 when Garcia was plaintiff's "cell occupant."  See Compl., ECF No. 1 at 1, 4-

7   5.  The complaint alleges that, in June 2010, plaintiff told defendants Bennett and Neimann that

8   Garcia was threatening him and "pushing [him] around in an assaultive manner," and that

9   plaintiff was fearful because he "is wheelchair dependent and cannot defend [himself]."  Id. at 4.

10  Defendants reportedly told plaintiff that they would talk with Garcia and "handle" the matter, and

11  instructed plaintiff to return to his cell or they would charge him with a disciplinary violation.

12  Nevertheless, plaintiff alleges that, in July 2010, he was "physically assaulted by his cell-

13  occupant Abel Garcia in the cell," requiring plaintiff to make a "man down" distress call to obtain

14  the assistance of officers and treatment for his injuries.  Id. at 5.

15          Notably, defendants contend, with supporting evidence, that plaintiff was housed with

16  inmate Abel Garcia from October 28, 2009 through March 22, 2010, but was housed in June and

17  July 2010 with inmate Fidel Reyes.  See Dfs. Statement of Undisputed Facts (DSUF), ECF No.

18  25-3 at 2 (Proffered Facts Nos. 6 & 7).  Plaintiff avers that these facts are "undisputed," see ECF

19  No. 26 at 2-3 (Pl. Response to DSUF Nos. 6 & 7), despite his allegations to the contrary.

20          In his responsive verified declaration, plaintiff states that he "wish[es] to point out

21  [defendants'] error concerning the identity of the inmate whose assault upon me underlies my

22  complaint."  Gaines Decl., ECF No. 27 at 2, ¶ 3.  Plaintiff asserts (without providing dates) that

23  he was initially housed with inmate Reyes, who assaulted him.  Then he was moved to new

24  housing with inmate Garcia.  Id. ¶ 3.  Plaintiff avers that both inmates were young, able-bodied,

25  belonged to the same prison gang, and were actively racist toward plaintiff, who is African

26  American.  Plaintiff alleges that other inmates would walk by their cell and tell Garcia that he

27  needed to get "that Nigger" out of his cell.  Id. ¶¶ 4, 11.  Plaintiff contends that "[m]atters reached

28  a head approximately three to four weeks after I moved in with Garcia."  Id. ¶ 12. Plaintiff avers

2

1    that, for a period of "almost a month," he spoke with both defendants and requested a move to

2    another cell, which was ignored.  Id. ¶¶ 5, 10, 15.  Plaintiff asserts that defendants were

3    nonresponsive because "motivated by a desire to inflict extrajudicial punishment" on plaintiff due

4    to the nature of the crimes for which he was convicted.  Id. ¶ 8.  Plaintiff alleges that defendants

5    witnessed Garcia's hostility toward him, including seeing Garcia slap plaintiff's food tray to the

6    ground.  Id. ¶9.  Plaintiff avers that, on the morning of the assault, when defendants returned

7    plaintiff to his cell, they saw that Garcia was shirtless, standing in the center of the cell, and

8    challenging plaintiff, but locked plaintiff in the cell nevertheless.  Plaintiff asserts that, "[a]fter a

9    short time" and his yells for help, "Bennett and Neimann opened the cell door and said in a very

10   casual voice, 'Man Down?'"  Id. ¶ 13.

11        In his verified complaint, plaintiff alleges that defendants' alleged inaction to plaintiff's

12   requests for protection created a "chilling effect on plaintiff's right to file an appeal about the

13   matter."  Compl., ECF No. 1 at 1, 9.  Plaintiff further alleges, id. at 6:

14           On 3-18-2011, [the Appeals Coordinator] D. Clark refused to
             accept plaintiff's appeal asserting plaintiff's appeal was a duplicate
15           of a previous appeal.

16           Plaintiff submitted a 602 appeal back to the Appeals Coordinator
             seeking a redress of Bennett and Neimann's refusal to move
17           plaintiff . . . D. Clark once again refused plaintiff's appeal and clear
             explanation as to why the appeal was not a duplicate.  This was 5-
18           23-2011.

19           [] D. Clark's refusal to accept plaintiff's 602 appeal chilled the
             effect to redress the constitutional violations of Bennett and
20           Neimann.

21        In addition, in his verified declaration, plaintiff states that "[a]fter this incident [the

22   assault], I filed an administrative appeal along with several inmate request[s] that this situation I

23   faced be remedied . . . My administrative appeals and inmate request were all deposited into the

24   marked collection box.  None were ever responded to in any way."  Gaines Decl., ECF No. 27 at

25   5, ¶¶16-7.  Plaintiff states that he submitted this appeal although he feared retaliation.  Id. ¶ 19.

26        Plaintiff also alleges generally that, "[w]hile the logging procedure described in

27   [defendants'] declarations may occur in an ideal setting, it is not my experience in reality."  Id.

28   Plaintiff avers that it is "not unusual" for appeals and inmate requests to go unanswered.  Id. ¶ 17.

3

1   He opines that "20 to 25 percent of such communication[s] seem to just disappear." Id. On at

2   least one occasion, plaintiff witnessed an officer "simply tear" up an appeal. Id. Plaintiff states

3   that he also witnessed retaliation by grieved prison officials, particularly in the form of cell

4   searches with destruction of property and the transferring of prisoners to other institutions. Id. at

5   ¶ 20.

6          Plaintiff has submitted the putative declaration of inmate Paul E. Fisher, a former

7   attorney. See ECF No. 27 at 7-8; see also n.1, infra. Mr. Fisher states that he has been in the

8   custody of CDCR since January 2012, and housed at Wasco State Prison, Chuckawalla State

9   Prison, and Valley State Prison. He states that he has "assisted many inmates in filing

10  administrative appeals during my more than three years incarceration," and has "also prepared at

11  least a dozen on my own behalf." Id. at 7, ¶¶ 2, 3. Mr. Fisher states that he is "extremely familiar

12  with the manner in which such appeals are processed." Id. ¶ 3. He states that "[i]n every

13  institution I have been housed, forms for such appeals are provided and are required to be filled

14  out and inserted into a slotted box, provided at many locations throughout the institution." Id.

15  However, Mr. Fisher contends that "[f]ully half of the appeals I have prepared, both for myself

16  and those for other inmates have never been responded to in any way. The institution at which

17  they were filed never acknowledged receipt or issued any responsive documentation." Id. ¶ 4.

18  Mr. Fisher provides an example from his experience at Wasco State Prison. Id. at 7-8, ¶ 5. Mr.

19  Fisher states that he has reviewed the motion for summary judgment in this case and the

20  declarations filed in support of defendants, and opines, based on his "personal experience," that

21  "the system described for processing appeals does not exist in reality. Instead, a very high

22  percentage of the appeals that I have been involved in have simply not been processed and no

23  explanation was ever given." Id. at 8, ¶ 6.

24     III.    Legal Standards

25         A.    Legal Standards for Summary Judgment

26         Summary judgment is appropriate when the moving party "shows that there is no genuine

27  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

28  Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of

1    proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144

2    v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

3    (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

4    this by "citing to particular parts of materials in the record, including depositions, documents,

5    electronically stored information, affidavits or declarations, stipulations (including those made for

6    purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

7    that such materials "do not establish the absence or presence of a genuine dispute, or that the

8    adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56

9    (c)(1)(A), (B).

10         When the non-moving party bears the burden of proof at trial, "the moving party need

11   only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

12   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

13   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

14   against a party who fails to make a showing sufficient to establish the existence of an element

15   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

16   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

17   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

18   circumstance, summary judgment should be granted, "so long as whatever is before the district

19   court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

20        If the moving party meets its initial responsibility, the burden then shifts to the opposing

21   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

22   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

23   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

24   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

25   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

26   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] [p]laintiff's verified complaint

27   may be considered as an affidavit in opposition to summary judgment if it is based on personal

28   ////

1   knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122,

2   1132 n.14 (9th Cir. 2000) (en banc).[1]

3        The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

4   might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

5   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

6   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

7   reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

8   Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

9        In the endeavor to establish the existence of a factual dispute, the opposing party need not

10  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

13  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

14  Matsushita, 475 U .S. at 587 (citations omitted).

15       In evaluating the evidence to determine whether there is a genuine issue of fact," the court

16  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

17  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

18  It is the opposing party's obligation to produce a factual predicate from which the inference may

19  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

20  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

21

---

22  [1]  In addition, in considering a dispositive motion or opposition thereto in the case of a pro se
    plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's
23  verified complaint or opposition.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)
    (evidence which could be made admissible at trial may be considered on summary judgment;
24  see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007)
    (district court abused its discretion in not considering plaintiff's evidence at summary judgment,
25  "which consisted primarily of litigation and administrative documents involving another prison
    and letters from other prisoners" which evidence could be made admissible at trial through the
26  other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit
27  decisions may be cited not for precedent but to indicate how the Court of Appeals may apply
    existing precedent).
28

6

1   party "must do more than simply show that there is some metaphysical doubt as to the material

2   facts. …  Where the record taken as a whole could not lead a rational trier of fact to find for the

3   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

4   omitted).

5          In applying these rules, district courts must "construe liberally motion papers and

6   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

7   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

8   support an assertion of fact or fails to properly address another party's assertion of fact, as

9   required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

10  . . . ."  Fed. R. Civ. P. 56(e)(2).

11         B.      Legal Standards for Exhausting Prisoner Administrative Remedies

12         The Prison Litigation Reform Act (PLRA) requires that prisoners exhaust "such

13  administrative remedies as are available" before commencing a suit challenging prison

14  conditions.  42 U.S.C. § 1997e(a).  Regardless of the relief sought, a prisoner must pursue an

15  appeal through all levels of a prison's grievance process as long as some remedy remains

16  available.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy

17  remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,'

18  and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th

19  Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  Hence, "[a]n

20  inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in

21  order to exhaust his administrative remedies."  Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir.

22  2010).

23         The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's

24  "critical procedural rules."  Woodford v. Ngo, 548 U.S. 81, 91 (2006).  "The level of detail

25  necessary in a grievance to comply with the grievance procedures will vary from system to

26  system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

27  boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007).  However, as

28  recently held by the Ninth Circuit Court of Appeals, if a prisoner fails to comply with procedural

7

1    requirements in pursuing his appeal, but prison officials address the merits of the appeal

2    nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies.

3    See Reyes v. Smith, __ F. 3d __, 2016 WL 146118, 2016 U.S. App. LEXIS 433 (9th Cir. Jan. 12,

4    2016) (Case No. 13-17119).

5         The Ninth Circuit has laid out the analytical approach to be taken by district courts in

6    assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner

7    to exhaust his administrative remedies.  As set forth in Albino v. Baca, 747 F.3d 1162, 1172 (9th

8    Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014) (citation and internal

9    quotations omitted):

10           [T]he defendant's burden is to prove that there was an available
             administrative remedy, and that the prisoner did not exhaust that
11           available remedy. . . . Once the defendant has carried that burden,
             the prisoner has the burden of production.  That is, the burden shifts
12           to the prisoner to come forward with evidence showing that there is
             something in his particular case that made the existing and
13           generally available administrative remedies effectively unavailable
             to him.  However, . . . the ultimate burden of proof remains with the
14           defendant.

15      If a court concludes that a prisoner failed to exhaust his available administrative remedies, the

16    proper remedy is dismissal without prejudice.  See Jones v. Bock, 549 U.S. 199, 223-24 (2010);

17    Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

18      IV.    Facts

19         Unless otherwise noted, the following facts are expressly undisputed by the parties or

20    found to be undisputed pursuant to this court's review of the evidence.[2]

21         1.  At all relevant times, plaintiff was incarcerated at High Desert State Prison (HDSP),

22    under the authority of California Department of Corrections (CDCR).

23         2.  At all relevant times, defendants Neimann and Bennett were employed as Correctional

24    Officers at HDSP.

25    ////

26    _____
      [2]  See Defendants' Statement of Undisputed Facts, ECF No. 25-3, and exhibits thereto; and
27    Plaintiff's "Response to Defendant's Claimed Statement of Undisputed Facts," ECF No. 26, and
      supporting declarations, ECF No. 27.
28

                                                    8

1    3. Following this court's screening of plaintiff's verified complaint pursuant to 28 U.S.C.

2    § 1915A, this action proceeds on plaintiff's Eighth Amendment failure to protect claims against

3    defendants Neimann and Bennett. <u>See</u> ECF Nos. 1, 6.

4    4. Plaintiff alleges that in June 2010 he told both defendants that Garcia, plaintiff's "cell

5    occupant," was threatening him and that plaintiff feared he would be assaulted by Garcia.

6    Plaintiff alleges that in July 2010 he was physically assaulted in his cell by inmate Garcia.

7    5. However, according to CDCR's Strategic Offender Management System (SOMS),

8    plaintiff was housed with inmate Garcia from March 21, 2009 to March 22, 2010, and with

9    inmate Reyes from March 22, 2010 to October 19, 2010. <u>See</u> Clark Decl., ECF No. 25-5, ¶ 7 and

10   Ex. A, ECF No. 25-5 at 8. Hence, according to SOMS, plaintiff's cellmate in June and July 2010

11   was Reyes, not Garcia. Plaintiff does not dispute this information, <u>see</u> ECF No. 26 at 2-3 (Pl.

12   Response to DSUF Nos. 6 & 7), despite his allegations to the contrary.

13   6. Plaintiff avers that, after the alleged assault, he submitted an appeal challenging

14   defendants' conduct by placing the completed appeal into a marked collection box, but never

15   received a response.

16   7. Plaintiff avers that, thereafter, on March 18, 2011 and May 23, 2011, he again sought

17   to submit his appeal, which was rejected both times by the Appeals Coordinator on the ground

18   that it duplicated a previous appeal.

19   8. At the request of defendants' counsel, the Office of the California Attorney General,

20   HDSP Appeals Coordinator D. Clark, and CDCR's Acting Chief of CDCR's Office of Appeals

21   (OOA) (which "receives, reviews and maintains all third level appeals concerning non-medical

22   issues") , M. Voong, conducted searches of CDCR's electronic database, the Inmate/Parolee

23   Appeals Tracking System (IATS), to identify all appeals submitted by plaintiff that challenged his

24   conditions of confinement at HDSP. <u>See</u> Clark Decl., ECF No. 25-5, and Voong Decl., ECF No.

25   25-4. Any appeal challenging conditions of confinement at HDSP that plaintiff may have

26   submitted after transferring to another institution are included in the IATS and in the searches

27   conducted by Clark and Voong. <u>Id.</u> ¶ 10. Any appeal challenging the conduct of defendants

28   alleged in this action would have been designated a staff complaint. Clark Decl. ¶ 6.

1    9.  The declaration and exhibits of HDSP Appeals Coordinator D. Clark demonstrates that

2    plaintiff submitted six non-medical appeals that were exhausted at first or second level review.

3    See Clark Decl. ¶ 11, and Exs. C, D, E, F, G, and H.  Plaintiff exhausted one of these appeals at

4    third level review.  See ECF No. 25-5 at 20; Clark Decl., Ex. D.  The court has reviewed each of

5    these appeals, all of which sought ADA accommodations unrelated to the claims in this action.

6    Plaintiff also submitted eleven appeals that were screened out;[3] copies of these appeals have not

7    been provided to the court.  However, none of these seventeen appeals were identified as staff

8    complaints.  See ECF No. No. 25-5 at 20.

9    10.  The declaration and exhibits of OOA Chief Voong demonstrate that plaintiff

10   exhausted only two non-medical appeals through third level review; both were exhausted in 2009,

11   and neither were staff complaints.  Voong Decl. ¶¶ 2, 4 and 8, and Exs. B and C; see also ECF

12   No. 25-4 at 5.  Plaintiff also submitted three appeals for third level review that were screened out;

13   one involved ADA accommodations; a second involved a property matter.  The third matter,

14   received on January 13, 2011, is the only designated staff complaint.  See ECF No. 25-4 at 5.

15   Chief Voong states generally that this appeal "was screened out in 2011 because it had been

16   inappropriately submitted at the third level of review without being authorized to bypass the

17   required lower levels of review.  This appeal was never resubmitted at the third level of review."

18   Voong Decl. ¶ 9.

19   11.  Plaintiff alleges that he subsequently attempted to submit an appeal related to the

20   claims in this lawsuit on March 18, 2011 and May 25, 2011, but the appeal was rejected both

21   times by Appeals Coordinator Clark on the ground that it was duplicative of a previously

22   submitted appeal.  Compl., ECF No. 1 at 6.  Defendants contend that, "[h]ad plaintiff submitted

23

24   [3]  "If an inmate submits an appeal that is untimely, lacks critical information, or otherwise does
     not comply with regulations governing the appeal process, the appeal may be cancelled or
25   rejected/screened out, meaning it is not accepted for review.  A rejected appeal is stamped as
     received by OOA, but then returned to the inmate without rendering a decision, along with a letter
26   notifying the inmate of the reason(s) for the rejection, and informing the inmate how to correct
     and resubmit the appeal within statutory deadlines.  OOA did not begin retaining copies of
27   screened out appeals and related letters until August l, 2014."  Voong Dec. ¶ 6.

28

1    two appeals in 2011, but they were screened out or rejected for any reason, . . . they nonetheless

2    would have been stamped as received by the HDSP Appeals Office, and they would have been

3    logged in IATS as staff complaints."  Clark Decl. ¶ 5.

4           V.  Analysis

5           Defendants bear the burden of demonstrating that plaintiff had an available administrative

6    remedy to grieve his claims in this action but did not exhaust that remedy.  Albino, 747 F.3d at

7    1172.  Defendants rely on the declaration of D. Clark to assert that "[a]t all times during the

8    relevant period of inmate Gaines' incarceration at HDSP, through the present, CDCR has had an

9    administrative appeal process in place for inmates."  Clark Decl. ¶ 8.  Clark has described that

10   process in detail, including how prisoners are informed of the process and how it is accessible to

11   prisoners.  See id. at ¶¶ 8-9.  Defendants contend that plaintiff had full access to HDSP's

12   administrative remedy process at all relevant times.  See Dfs. Memorandum, ECF No. 25-2 at 7-

13   8.

14          Plaintiff generally asserts that HDSP's administrative appeal process is, as a practical

15   matter, sometimes unavailable to prisoners.  However, this general assertion does not demonstrate

16   that the process was unavailable to plaintiff.  On the contrary, plaintiff avers that after the assault

17   he deposited his appeal into a marked collection box, implying that he had timely access to the

18   relevant appeal forms and easy access to an appropriate collection box.  Plaintiff does not assert

19   that he was unaware of the grievance process or that he was prevented from timely submitting his

20   appeal.  Cf. Albino, 747 F. 3d at 1175-76 (failure of jail officials to inform plaintiff of the

21   administrative grievance procedure rendered it unavailable); see also Mitchell v. Horn, 318 F.3d

22   523, 529 (3rd Cir. 2003) (plaintiff lacked available administrative remedy because prison officials

23   refused to provide him with the necessary grievance forms).  In the absence of specific allegations

24   that plaintiff did not have access to HDSP's administrative appeal process following his assault,

25   the court finds that defendants have met their burden of demonstrating that plaintiff had an

26   administrative remedy at HDSP, of which he was aware and which he allegedly initiated.

27          The burden now shifts to plaintiff "to come forward with evidence showing that there is

28   something in his particular case that made the existing and generally available administrative

11

1    remedies effectively unavailable to him."  Albino, 747 F.3d at 1166.  As explicitly stated in the

2    statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are

3    available.'"  Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010) (quoting 42 U.S.C. §

4    1997e(a)) (improper screening of grievance "renders administrative remedies 'effectively

5    unavailable' such that exhaustion is not required under the PLRA"); see also Nunez v. Duncan,

6    591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use

7    are not capable of accomplishing their purposes and so are not available," particularly where

8    plaintiff "took reasonable and appropriate steps to exhaust."); Brown, supra, 422 F.3d at 935 (a

9    prisoner's obligation to exhaust administrative remedies persists only as long as some remedy

10    remains available).

11        Plaintiff contends that HDSP's grievance process was effectively unavailable to him to

12    exhaust his administrative remedies on his claims in this case.  Plaintiff relies only on his sworn

13    statements that he timely submitted a relevant appeal but received no response, and that, months

14    later, he attempted to submit relevant appeals that were rejected on the ground that they were

15    duplicative of a prior appeal.  Plaintiff has submitted no evidence in support of these statements.

16    The sworn statement of Mr. Fisher is unhelpful because it provides only general allegations about

17    the appeals process throughout CDCR.

18        The absence of an official record is not itself determinative as to whether an appeal was

19    actually submitted.  See e.g. McCoy v. Stratton, 2014 WL 6633319, at *8, U.S. Dist. LEXIS

20    163519, at *20 (E.D. Cal. Nov. 20, 2014) (Case No. 2:12-cv-1137 WBS DAD P) (absence of

21    official record "shows non-receipt rather than non-submission" (citation omitted)), report and

22    recommendation adopted, 2015 WL 273567, 2015 U.S. Dist. LEXIS 7030 (E.D. Cal. Jan. 21,

23    2015).  Nevertheless, some supporting evidence appears necessary to sustain plaintiff's sworn

24    statements.  See e.g. Cotton v. Cate, 2015 WL 1246114, at *3, 2015 U.S. Dist. LEXIS 33023, at

25    *8-9 (N.D. Cal. Mar. 17, 2015) (material factual dispute raised by plaintiff's proffered copy of his

26    appeal, of which there was no official record); Cato v. Dumont, 2015 WL 9659978, at *5, 2015

27    U.S. Dist. LEXIS 158114, at *13 (E.D. Cal. Nov. 20, 2015) (Case No. 1:14-cv-0564 LJO SAB P)

28    (same), report and recommendation adopted sub nom. Cato v. Silva, 2016 WL 70324, 2016 U.S.

12

1   Dist. LEXIS 1933 (E.D. Cal. Jan. 6, 2016); Felton v. Lopez, 2015 WL 350798, at *12, 2015 U.S.

2   Dist. LEXIS 8102, at *32 (E.D. Cal. Jan. 23, 2015) (Case No. 1:12-cv-1066 AWI GSA P) ("The

3   court finds Plaintiff's August 8 query to be credible evidence that Plaintiff placed his first appeal

4   in the appeals box sometime between July 20, 2012 and August 8, 2012."), report and

5   recommendation adopted, 2015 WL 1011723,  2015 U.S. Dist. LEXIS 26476  (E.D. Cal. Mar. 4,

6   2015).

7        In the instant case, plaintiff has submitted no corroborating evidence to demonstrate that

8   he timely submitted an initial appeal, or to create a material factual dispute on the matter.  Nor

9   does his sworn statement contain supporting factual detail sufficient to satisfy that burden

10  standing alone.  Plaintiff does not provide a copy of the appeal or describe its contents, does not

11  identify the date he allegedly completed and submitted it, and does not identify which box he

12  allegedly deposited it into.  Cf. Jones v. Bishop, 2010 WL 4628067, at *6, 2010 U.S. Dist. LEXIS

13  117837, at *16 (E.D. Cal. Nov. 5, 2010) (Case No. 2:09-cv-0150 JLQ EFB P) ("There is no

14  evidence in the record to support Plaintiff's bald assertion that he ever timely filed or attempted to

15  timely file a grievance/appeal . . . . Although the court must construe the Plaintiff's materials

16  liberally, it is not permissible for the court to sustain a general allegation . . . without any measure

17  of evidentiary support in the record."); Bassett v. Callison, 2010 WL 5393985, at *7, 2010 U.S.

18  Dist. LEXIS 137987, at *18 (E.D. Cal. Dec. 22, 2010) (Case No.  2:10-cv-0539 KJN P)

19  ("Plaintiff stated, in conclusory fashion, that officials destroyed or lost these appeals . . . . [but] he

20  provided no facts or evidence to support this conclusion"); Bull v. Scribner, 2012 WL 5878195,

21  at *5, 2012 U.S. Dist. LEXIS 165840, at *17 (E.D. Cal. Nov. 20, 2012) (Case No. 1:05-cv-01255

22  LJO GSA P) ("Plaintiff fails to demonstrate that he properly utilized the process available to

23  him."), aff'd sub nom. Bull v. Brown, 616 F. Appx. 289 (9th Cir. 2015); Webb v. Cahlander,

24  2015 WL 6531642, at *4, 2015 U.S. Dist. LEXIS 146352, at *9 (E.D. Cal. Oct. 28, 2015) (Case

25  No. 1:13-cv-01154 DLB P) ("Plaintiff fails to substantiate his claim with evidence in any

26  manner.").

27       Nor does plaintiff assert or provide any evidence that he made any informal or formal

28  inquiries in an effort to discover why he received no response to his appeal.  Cf. Bassett, supra,

13

1    2010 WL 5393985, at *7, 2010 U.S. Dist. LEXIS 137987, at *18-9 ("Plaintiff has failed to

2    provide specific factual information concerning to whom he gave the appeals, whether he

3    submitted follow-up inquiries regarding these appeals, or whether he attempted to resubmit the

4    appeal once he allegedly received no response. . . . [I]t is insufficient for plaintiff to simply

5    submit a first appeal and then consider it exhausted because he heard nothing further but took no

6    further action to inquire or appeal to the next level".).

7            Despite receiving timely and adequate notice of the necessity to submit evidence in

8    opposition to defendants' motion for summary judgment, see ECF No. 25-1, plaintiff has

9    submitted only his "bald assertion" that he timely submitted an appeal but received no response.

10   The court finds that this assertion, though competent evidence because sworn under penalty of

11   perjury, is insufficient to meet plaintiff's burden of producing evidence that HDSP's generally

12   available administrative remedies were effectively unavailable to plaintiff in "his particular case."

13   Albino, 747 F.3d at 1172.

14           Plaintiff's further assertions that he later attempted to exhaust his remedies in 2011 does

15   not require a different result.  Plaintiff alleges that he sought to grieve his claims by submitting

16   appeals on March 18, 2011 and May 23, 2011, that were rejected as "duplicative."  See Compl.,

17   ECF No. 1 at 6.  Plaintiff does not provide copies of these appeals.  Moreover, defendants have

18   submitted evidence indicating that plaintiff submitted only one appeal that was designated a staff

19   complaint (and hence could have been related to the allegations in this action), but it was received

20   on January 13, 2011.  See ECF No. 25-4 at 5.  To timely grieve his July 2010 assault, plaintiff

21   needed to submit an appeal within fifteen working days thereafter.  See Clark Decl. ¶ 9.  Neither

22   plaintiff nor defendants have identified the date of the alleged assault.  However, as defendants

23   contend, any appeal grieving this incident filed in March or May 2011 (or January 2011) would

24   have been untimely.  See Dfs. Memo., ECF No. 25-2 at 9; Clark Decl. ¶ 12 ("It should be noted

25   that to the extent inmate Gaines submitted appeals in March and May 2011 that related to

26   incidents taking place in June or July 2010, they would have been untimely under both the 2009

27   and 2011 regulations."); see also Clark Decl. ¶¶ 9, 13.

28           For these reasons, the court finds that plaintiff has not met his burden of presenting some

14

1  evidence demonstrating a material factual dispute whether HDSP's administrative remedies were

2  effectively unavailable to him to exhaust his claims in this action.  The absence of any evidence

3  on this question underscores the inconsistencies and lack of clear allegations in this case,

4  particularly the identity of plaintiff's cellmate during the relevant period, and the date of the

5  alleged assault.

6       Accordingly, this court finds that plaintiff failed to comply with the requirement of the

7  PLRA that he exhaust his available administrative remedies before commencing this suit.  See 42

8  U.S.C. § 1997e(a).  Therefore, this court recommends that defendants' motion for summary

9  judgment be granted and this action be dismissed without prejudice.

10      VI.  Conclusion

11      For the foregoing reasons, IT IS HEREBY ORDERED that the Clerk of Court is directed

12  to randomly assign a district judge to this case.

13      Further, IT IS HEREBY RECOMMENDED that:

14      1.  Defendants' motion for summary judgment, ECF No. 25, be granted on failure-to-

15  exhaust grounds; and

16      2.  This action be dismissed without prejudice.

17      These findings and recommendations are submitted to the United States District Judge

18  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

22  failure to file objections within the specified time may waive the right to appeal the District

23  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24  DATED: February 3, 2016

25  _____
    ALLISON CLAIRE
26  UNITED STATES MAGISTRATE JUDGE

27

28